UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EDMOND J. CARRIERE, JR., | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. |
|  | ) 15-13496-FDS |
| SUPERINTENDENT SEAN MEDEIROS, | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER
# ON PETITION FOR A WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Petitioner Edmond J. Carriere, Jr., was convicted by a jury in state court of one count of first-degree murder under theories of deliberate premeditation and extreme atrocity and cruelty. *Commonwealth v. Carriere*, 470 Mass. 1, 3 (2014). He was given a mandatory sentence of life in prison without the possibility of parole.

Carriere alleges three grounds for relief: (1) that his Sixth Amendment right to confrontation and Fourteenth Amendment right to a fair trial were violated by the trial judge's admission of numerous hearsay statements; (2) that he was denied his right to due process when the trial judged precluded him from eliciting purportedly admissible and exculpatory evidence from a witness; and (3) that his due process rights were violated because of the prosecutor's improprieties during his closing argument. For the following reasons, the petition will be denied.

## I. Background

### A. Factual Background

The facts of this case are set out in detail in the decision of the Supreme Judicial Court.

Frances Carriere was found stabbed to death in her home in Bourne, Massachusetts, on January 3, 1980. *Carriere*, 470 Mass. at 3. Prior to her death, Frances and her husband, Edmond J. Carriere, Jr., had been in the midst of a tumultuous divorce. *Id.* at 4. Carriere believed Frances would take the home and "everything else" from him, and she refused to accept Carriere's offer of money in exchange for her "just [going] away." *Id.*

Two or three months before Frances's death, Carriere asked his friends Charles Berryman and Russell Breault whether they had any desire to make some money by killing Frances. *Carriere*, 470 Mass. at 4. Carriere offered them $2,000 for the murder, but Berryman and Breault thought Carriere was merely joking. *Id.* In December 1979, Carriere revisited the idea of Frances's murder and asked another friend, Richard Grebauski, if he "knew anyone big, big and black that would go in there and do things to his wife that she would never forget." *Id.* at 4-5. Grebauski's then-girlfriend, Shannon Glover, and friend, Steven Stewart, both overheard Carriere talking about his wish that his wife were dead. *Carriere*, 470 Mass. at 5.

Later, Grebauski told Stewart that Carriere had offered him $5,000 to kill Frances and asked Stewart if he wanted to participate. *Carriere*, 470 Mass. at 5. Although he initially declined, Stewart eventually agreed to the proposal because he owed Grebauski $500 for prior cocaine purchases. *Id.*

On December 10, 1979, Carriere and his minor daughter traveled to Florida to visit his older daughter, Linda McCraney. *Carriere*, 470 Mass. at 5. During the visit, Carriere made contentious remarks regarding Frances, including calling her a whore who slept with everybody on Cape Cod and stating that she would be sorry for continuing with the divorce. *Id.*

2

On January 3, 1980, Carriere called Grebauski to tell him that Frances had to be killed that night because his daughter's school break was ending and they needed to return to Massachusetts. *Carriere*, 470 Mass. at 5. Grebauski retrieved a fillet knife from his kitchen and a pair of gloves. *Id.* Grebauski handed the materials to Stewart and instructed him to walk into the Carriere family house and stab Frances in the heart. *Id.* at 5-6. Stewart went to the house, found Frances in the bathroom, and stabbed her after a struggle in which she hit her head on the radiator. *Id.* at 6. Stewart then disposed of the knife and gloves in the Cape Cod Canal and drove to his grandmother's home in Brockton. *Id.* Upon arriving in Brockton, Stewart contacted Grebauski to tell him the job was done. *Id.*

Soon thereafter, Carriere went to Grebauski's house, where Grebauski and Stewart were playing pool, to deliver the money. *Carriere*, 470 Mass. at 7. Although satisfied that Frances was dead, Carriere was outraged Stewart and Grebauski had not disposed of Frances's body and had not also killed Carriere's son, and he threatened not to pay the full amount. *Id.* However, Carriere eventually acquiesced and threw $10,000 down on Grebauski's pool table. Grebauski and Stewart then engaged in their own contentious debate regarding the proper allocation of the money. *Id.* Ultimately, Stewart received $4,500 for the murder—the $5000 he was initially promised minus the $500 he owed to Grebauski. *Id.*

B. **Procedural Background**

On May 22, 2012, a jury in Barnstable County Superior Court convicted Carriere of one count of first-degree murder under theories of deliberate premeditation and extreme atrocity and cruelty. Carriere was sentenced to a term of natural life without the possibility of parole. He appealed his conviction on June 15, 2012, directly to the Massachusetts Supreme Judicial Court ("SJC") pursuant to Mass. Gen. Laws ch. 278, § 33E. The SJC denied his appeal on October 28, 2014. Carriere did not seek further review from the United States Supreme Court.

3

Carriere timely filed the present petition on October 1, 2015, claiming violations of his Sixth and Fourteenth Amendment rights. See 28 U.S.C. § 2254(d).

The amended petition presents four grounds: (1) that Carriere was "denied his right to a fair trial by the admission of prejudicial inadmissible hearsay; and his right to confrontation under the Sixth Amendment was violated by the admission of such evidence and thus it was contrary to, an unreasonable application of, clearly established Supreme Court precedent"; (2) "the defendant was denied his constitutional right to a fair trial when the Commonwealth was permitted to introduce incredibly prejudicial and irrelevant evidence that the defendant wanted his son killed and that he wanted a big black man to 'do things to his wife that she would never forget'"; (3) he was "denied his due process right to a fair trial when the trial court precluded him from eliciting crucial testimony that Grebauski[] admitted to Mello 'I offed the bitch'"; and (4) "the SJC's decision denied petitioner's Fourteenth Amendment right to due process when it allowed the prosecution to introduce highly inflammatory closing argument which contained misstatement of law." (Am. Pet. at 19, 28, 32, 43).

Respondent filed an opposition on October 25, 2016. On June 22, 2017, the Court entered an order finding that the second ground of the petition had not been exhausted, and directing Carriere to dismiss all claims or proceed solely on the exhausted claims. Carriere elected to dismiss the second ground in order to proceed on his other claims.

## II. Standard of Review

### A. Habeas Review

Under 28 U.S.C. § 2254(d), a federal court may not issue a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an

4

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if it (1) "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or (2) resolves a case differently from the Supreme Court on a set of "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). In either scenario, the state-court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to Supreme Court precedent. *Williams*, 529 U.S. at 405.

A state-court decision involves an "unreasonable application" of federal law if the state court identified the correct governing legal principle from the Supreme Court's decisions, but applied it in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (citing *Williams*, 529 U.S. at 409). The Supreme Court has cautioned that "[a]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 365. The state court's application of federal law must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 410, 412); *see also Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007) ("A decision can still be reasonable even if the reviewing court thinks it is wrong; 'unreasonable' here means something more than incorrect or erroneous."). Furthermore,

> if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application . . . . [S]ome increment of incorrectness beyond error is required. The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.

*McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (internal citations and quotation marks omitted).

5

B. **Adequate and Independent State Ground**

Generally, "federal habeas review is precluded . . . when a state court has reached its decision on the basis of an adequate and independent state-law ground." *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). This rule reaches those situations in which "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. A state procedural law is "adequate" if it is regularly or consistently applied by the state courts. *Hodge v. Mendonsa*, 739 F.3d 34, 43 (1st Cir. 2013). The rule is "independent" if it does not depend on a federal constitutional ruling. *Coleman*, 501 U.S. at 741. Moreover, the doctrine may still apply where the state procedural default is offered as an "alternative" basis for a decision. *Coleman*, 501 U.S. at 733.

In cases involving such a procedural default, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. As to "cause," the petitioner bears "the risk of attorney error that results in procedural default," and a showing of "cause" requires that the petitioner demonstrate "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Burks*, 55 F.3d at 716-17. As to "prejudice," a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Massachusetts has a "long-standing rule that issues not [timely] raised at trial . . . are treated as waived." *Commonwealth v. Curtis*, 417 Mass. 619, 626 (1994)). Failure to comply

6

with a state's contemporaneous objection rule constitutes an adequate and independent state ground. *Wainwright v. Sykes*, 433 U.S. 72 (1977). The SCJ will review a claimed error that was not objected to under a substantial-miscarriage-of-justice standard, *Commonwealth v. Wright*, 411 Mass. 678, 682 (1992), but that review does not constitute a state waiver of the contemporaneous-objection rule for the purposes of habeas review. *Janosky v. St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010); *Burks*, 55 F.3d at 716, n.2; *Tart v. Massachusetts*, 949 F.2d 490, 496 (1st Cir. 1991).

### III. Analysis

#### A. Right to Confrontation and a Fair Trial

Carriere contends that several hearsay statements were improperly admitted as statements of joint venturers, and that this implicated his constitutional due-process right to a fair trial. He contends that those same statements violated his constitutional right to confront the witnesses against him. (Am. Pet. at 22-28); *see Carriere*, 470 Mass. at 8-12.

As to the evidentiary question, the SJC did not appear to address the admission of hearsay testimony in constitutional terms. Rather, it addressed the question of whether the hearsay statements were properly admitted solely in terms of Massachusetts state law. *See Carriere*, 470 Mass. at 8-12. Respondent, however, does not contend that Carriere failed to present his due-process claim to the SJC, and it appears that he did, if only barely, raise that claim. (S.A. 41). Because the SJC did not address the constitutional due-process claim on the merits, this Court will review that claim *de novo*. *Lynch v. Ficco*, 438 F.3d 35, 48 (1st Cir. 2006); *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001).

Carriere argues that the Massachusetts evidentiary principle at issue is equivalent to Fed. R. Evid. 801(d)(2)(E), and therefore this evidentiary claim is proper for federal court. But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law

7

questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States. *Id.* at 68; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."); *See also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) ("Cases in this Court have been proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. But is has never been thought that such cases establish this Court has the rule-making organ for the promulgation of state rules of criminal procedure." (citations omitted)). Thus, "[f]ederal courts sitting in habeas must accept state court rulings on state law issues." *Rodriguez v. Spencer*, 412 F.3d 29, 37 (1st Cir. 2005).

> Sometimes, however, as the First Circuit has explained,
>
> [a]n erroneous evidentiary ruling that results in a fundamentally unfair trial may constitute a due process violation and thus provide a basis for habeas relief. However, to give rise to habeas relief, the state court's application of state law must be so arbitrary or capricious as to constitute an independent due process violation. To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible.

*Jaynes v. Mitchell*, 824 F.3d 187, 195 (1st Cir. 2016) (quoting *Lyons v. Brady*, 666 F.3d 51, 55-56 (1st Cir. 2012)). The Court will therefore review the state court's evidentiary rulings *de novo* to ascertain whether they so infused the trial with inflammatory prejudice that it rendered a fair trial impossible.

Apart from evidentiary questions, a defendant in a criminal trial has a Sixth Amendment right to confront the witnesses against him. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."). Accordingly, when a witness does not appear at trial, the prosecution may not offer his out-of-court statements that are (1) testimonial in nature, *see Davis v. Washington*, 547 U.S.

8

813, 823-25 (2006), and (2) offered for the truth of the matter asserted, *see Crawford v. Washington*, 541 U.S. 36, 59-60 & n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)), unless (3) the witness is unavailable and the defendant had a prior opportunity to cross-examine him, *Crawford*, 541 U.S. at 53-54.

The Supreme Court has not provided a precise definition of what statements count as "testimonial." *See Ohio v. Clark*, 135 S. Ct. 2173, 2179 (2015); *Crawford* 541 U.S. at 68; *United States v. Rodriguez-Marrero*, 390 F.3d 1, 16 (1st Cir. 2004). Instead, it has directed lower courts to determine whether the statement has "[the] primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," *see Davis* 547 U.S. at 822, or falls within a "core class of testimonial statements," *Crawford* 541 U.S. at 51-52.[1] Ultimately, when evaluating whether a statement falls within a "core class of testimonial statements," the court must determine whether the "declarant would reasonably expect [the statements] to be used prosecutorially." *Id.* at 51; *see Giles v. California*, 554 U.S. 353, 376 (2008) (explaining that statements by abused women to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment are not testimonial). As relevant here, the Supreme Court has specifically stated that statements among those who conspire to commit a crime are not testimonial. *Crawford*, 541 U.S. at 56; *Michigan v. Bryant*, 562 U.S. 344, 362 n.9 (2011).

For most of the challenged statements, the SJC clearly ruled on the Sixth Amendment question, and its decisions thereon are subject to deferential review. 28 U.S.C. § 2254(d). Where the SJC did not rule on Carriere's Sixth Amendment challenges, the Court will review his

---

[1] Some examples of "core class" testimonial statements are: "affidavits, custodial examinations, [and] prior testimony the defendant was unable to cross-examine." *Crawford*, 541 U.S. at 51-52.

9

claims *de novo*.

## 1. Grebauski's Statements to Stewart and Stewart's Statements to Tracy

Grebauski died in 2004, eight years prior to the trial, and many of his statements were introduced through Stewart's testimony pursuant to the Massachusetts joint-venture exception to the hearsay rule. There was also testimony by Stephen Tracy describing what Stewart told him about somebody wanting Grebauski "to do his old lady." Carriere contends that those statements do not qualify as joint-venture statements, and even if they do, their admission nonetheless violated the Confrontation Clause.

In order to satisfy the Massachusetts joint-venture exception to the hearsay rule, the proponent of the statement must demonstrate that the out-of-court statements by joint venturers were made during the pendency of the criminal enterprise and in furtherance of it. *Carriere*, 470 Mass. at 8 (citing *Commonwealth v. Burton*, 450 Mass. 55, 63 (2007); *Commonwealth v. Bongarzone*, 390 Mass. 326, 340 (1983)). Under Massachusetts law, the existence of the joint venture must be established by evidence independent of the statements sought to be admitted. *Commonwealth v. Bright*, 463 Mass. 421, 426-27 (2012); *Burton*, 450 Mass. at 63; *Commonwealth v. Cruz*, 430 Mass. 838, 844 (2000); *cf. Bourjaily v. United States*, 483 U.S. 171, 176-79 (1987) (federal law allowing the court to consider the statements sought to be admitted as part of determination of whether there was a conspiracy); *United States v. Dowdell*, 595 F.3d 50, 74 (1st Cir. 2010) (same).

The SJC determined that there was ample support in the record a finding of a joint venture between Carriere, Grebauski, and Stewart, including Carriere's own statements (which are not hearsay) and his act of throwing $10,000 down on Grebauski's pool table. *Carriere*, 470 Mass. at 9-10; (*see* Am. Pet. at 23). It also determined that there was evidence to support a finding that the statements by Grebauski and Stewart were made in furtherance of the joint

venture, including Grebauski's statement to Stewart about Carriere's $5,000 offer and Stewart's statement to Tracy about Grebauski saying someone wanted him to "do his old lady," because they concerned the formation of the joint venture. *Carriere*, 470 Mass. at 11.

The SJC correctly stated the law, and the Court cannot conclude that its application of that law was incorrect, much less so arbitrary or capricious as to infect the trial with inflammatory prejudice. Furthermore, Massachusetts law is more protective of the defendant than federal law, which does not require that the court find a conspiracy wholly independently from the statements sought to be admitted. *See Bourjaily*, 483 U.S. at 177. It is hard to see how even a violation of the state rule in this respect could possibly amount to a due-process violation when federal law allows admissibility on less-stringent conditions. Carriere does not contend that the independent evidence of a conspiracy combined with the statements sought to be admitted does not establish the conspiracy by a preponderance of the evidence. (*See* Am. Pet. 23-24). Therefore habeas relief is not warranted on the ground that the admission of those statements was a due-process violation.[2]

Carriere contends that the admission of the statements nonetheless violated his right to confront the witnesses against him. The SJC correctly held that the Confrontation Clause does not bar admission of statements of joint venturers or co-conspirators. *Carriere*, 470 Mass. at 8-9. *Crawford* unequivocally states that statements "in furtherance of a conspiracy" are not testimonial. 541 U.S. at 56. And the admission of Stewart's statements to Tracy cannot be a

---

[2] The SJC also addressed testimony about an incident in 1977 when Stewart, Grebauski, and Carriere were involved in the theft of two truckloads of lumber. *Carriere*, 470 Mass. at 11-12. The SJC concluded that that testimony was outside the scope of the joint venture to kill Frances, and should not have been admitted. But because Carriere did not object to that testimony at time, the SJC limited its consideration to whether the admission of the testimony resulted in a substantial miscarriage of justice. *Id.* It is not clear whether Carriere is including that testimony in his habeas challenge. Regardless, the failure to object is a procedural default under an adequate and independent state ground as to which Carriere has not attempted to show cause. Therefore, habeas relief is not warranted as to that ground.

Confrontation Clause violation, because Stewart testified at the trial and Carriere had the opportunity to cross-examine him. Therefore, Carriere has not established that the SJC's decision is contrary to, or involves an unreasonable application of, clearly established federal law.

### 2. Phinney's Statements to Berryman

Carriere also challenges testimony by Berryman that David Phinney had called him from Florida to say, "It hasn't happened yet, but it's going to happen tonight. Listen to your radio, watch the TV. She's going to die tonight." *Carriere*, 470 Mass. at 10 n.6; (Pet'r's Mem. at 24).

The SJC held that there was not sufficient evidence to establish that Phinney was part of the conspiracy, and this statement should not have been admitted pursuant to the joint-venture hearsay exception. *Carriere*, 470 Mass. at 10 n.6. Nevertheless, it determined that the admission of that testimony did not result in prejudicial error, because it was cumulative of substantial other evidence of Carriere's plan to kill the victim on January 3 and evidence that Phinney had unexpectedly traveled to Florida.

Reviewing the admission of the testimony *de novo*, the Court concludes that there is no due-process violation. As the SJC discussed, the testimony was cumulative of substantial other evidence in the case, and its admission did not "so infuse the trial with inflammatory prejudice that it renders a fair trial impossible."

Although the SJC did not explicitly address whether the admission of that testimony violated the Confrontation Clause, it is clear that it does not. Phinney testified at the trial, was cross-examined about that statement, and denied having made it. *Id.* Under the circumstances, the Court sees no reason to disturb that judgment.

### 3. Phinney's Statements to White

Carriere also objects to testimony by Sergeant Paul White that Phinney told him that he

12

went to Florida in order to provide an alibi for Carriere.

Carriere did not object to White's testimony at trial, but he did raise it in his appeal to the SJC. *Carriere*, 470 Mass. at 9; (S.A. 45). It seems that the SJC should have evaluated the admission of that testimony under its substantial-miscarriage-of-justice standard, as is its practice. *Curtis*, 417 Mass. at 626. Instead, it merely noted that the testimony had not been objected to and said no more about it. But, regardless of whether the SJC did review the issue for substantial miscarriage of justice, Carriere's procedural default is an adequate and independent state ground precluding federal habeas review, because he has not even attempted to show either cause or prejudice from the default. *Coleman*, 501 U.S. at 750; (*See* Am. Pet. at 24-25).

Furthermore, even if it were not procedurally defaulted and the Court were to review the admission of White's testimony *de novo*, it clearly did not violate either the Massachusetts hearsay rules or petitioner's Sixth Amendment rights. Among other things, it was not offered for the truth of the matter asserted and Phinny testified at the trial and was available for cross-examination. *See Davis*, 547 U.S. at 823-25. The prosecution called Sergeant White to introduce Phinney's statement as a prior inconsistent statement and not for its truth. (Trial Tr. vol. 9 at 1590-91, 1623; Trial Tr. vol. 10 at 1701, 1778). This purpose was recognized by the trial judge, who gave an appropriate limiting instruction directing the jurors to only consider the statement as it concerned the witness's credibility rather than for its truth. (Trial Tr. vol. 10 at 1778).

B. **Excluded Statement**

Carriere further contends he was denied his right to a fair trial when the trial court prevented him from eliciting a potentially exculpatory statement by Grebauski through the testimony of David Mello. Petitioner alleges that while driving past the Carrieres' home,

13

Grebauski told Mello: "See that white house there? I offed the bitch. She was getting to be too much trouble and I killed her. I had to wait until her daughter went to Florida with her father before I could kill her." *Carriere*, 470 Mass. at 17. The trial judge held that it could not be admitted as a statement against penal interest because it was not corroborated by circumstances clearly indicating its trustworthiness. *Id.* at 18 (citing *Commonwealth v. Charles*, 428 Mass. 672, 677 (1999)). On review, the SJC determined that Mello's proffered testimony should have been admitted, but that the error was not prejudicial because the statement was not in fact exculpatory—it did nothing to undermine the Commonwealth's theory that Grebauski participated in the murder at Carriere's request. *Id.* ("Given the other evidence of Grebauski's involvement, the statement would have 'had but very slight effect' on the jury.").

"[W]hen a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry v. Plilar*, 551 U.S. 112, 119 (2007) (citing *Mitchell v. Esparza*, 540 U.S. 12 (2003)). To be entitled to habeas relief, a petitioner must show that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see Fry*, 551 U.S. at 119-20; *Connolly* v. *Roden*, 752 F.3d 505, 510-11 (1st Cir. 2014).[3]

Carriere's claim fails under *Brecht*. As the SJC noted, the Commonwealth's theory of the case was that Carriere paid Grebauski and Stewart to kill his wife. Under that theory, it does not matter whether it was Carriere or Grebauski or Stewart who held the knife. Therefore,

---

[3] Petitioner argues that the SJC failed to rule on the merits of his constitutional claim, and therefore this Court should review his claim *de novo*. (Pet'r's Mem. at 40.5). But the SJC did recognize the constitutional nature of his claim, *see Carriere*, 470 Mass. at 17 (explaining that "[a] defendant has a constitutional right to present a defense, and to offer evidence that another person committed the crime"), and a decision that an error was harmless is a decision on the merits and therefore deserves deference from this Court, *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015).

Grebauski's excluded statement does little to "exculpate" Carriere. Although Carriere argues that the statement was "key" to his theory of the case that Stewart was lying and that Grebauski murdered Frances for reasons of his own, he agrees that Grebauski's statement is not actually inconsistent with the Commonwealth's theory. (Pet'r's Mem. at 35 ("Indeed, one of the great oddities of this case is that the statement was credible, reliable, and true under the [C]ommonwealth's theory of the case; the defendant had hired Grebauski to kill his wife and Grebauski had in turn[] hired Stewart to do the job, so, Grebauski most certainly did 'off the bitch,' even under the [C]ommonwealth's theory of the case.")). Accordingly, the SJC's harmless-error determination was reasonable and that the trial error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

C. **Prosecutor's Closing Argument**

Carriere further contends that the prosecutor committed improprieties during closing argument that deprived him of his right to a fair trial and thus violated his right to due process. In particular, he contends that (1) the prosecutor misstated the law concerning the burden of proof and (2) the prosecutor "poisoned the jury" by calling Carriere the "mastermind" of the scheme.

In order to succeed on such a challenge, Carriere must demonstrate the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process"; "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor).

The *Darden* standard is a "very general one" that grants courts "more leeway . . . in

15

reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Akara v. Ryan*, 270 F. Supp. 3d 423, 436 (D. Mass. 2017). If the prosecutor's statements are deemed improper, a court on habeas review must assess whether a new trial is required based on the following factors: (1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case. *Olszewski v. Spencer*, 466 F.3d 47, 59 (1st Cir. 2006) (quoting *United States v. Lowe*, 145 F.3d 45, 50 (1st Cir. 1998)). Moreover, the assessment of the prosecutor's comments must be viewed in context, not standing alone. *United States v. Young*, 470 U.S. 1, 11 (1985).

1. **<u>Burden of Proof</u>**

Carriere contends that the prosecutor's continued references to the jury as the "judges of the facts" and the prosecutor's statement concerning the Latin deviation of the word "verdict" improperly shifted the burden of proof.[4] The SJC determined the alleged burden-shifting statements, taken as whole, were not improper. The SCJ reasoned that the prosecutor twice mentioned during his closing that the burden was on the Commonwealth to prove the case beyond a reasonable doubt and that it was the jury's exclusive province to determine what the facts were. *Carriere*, 470 Mass. at 19-21. The SJC also noted that, although the trial judge declined to give a curative statement immediately after the prosecutor's closing remarks, in his final charge, the trial judge clearly stated the appropriate role of the jury, reminded the jury that it was the Commonwealth's burden to prove its case beyond a reasonable doubt, and advised the

---

[4] The prosecutor told the jury it was its duty "determine what happened," and "to determine what version [of events] is the correct version. What is it that happened?" *Carriere*, 470 Mass. at 19. The prosecutor also mentioned that "[t]he term 'verdict' comes from the Latin 'veritas,' truth; and 'dicta,' to speak. Speak the truth. Thirty-two years is a long time; and now it's time for you, jurors, to speak the truth." *Id.*

16

jury that opening and closing statements are not evidence. *Id.*

The SJC's decision is not unreasonable. Even if the prosecutor's statement were in fact somehow improper, it is highly unlikely any prejudice remained after the trial judge's "detailed and proper" curative instructions. Therefore the SJC's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

### 2. Prejudicial Statements

Carriere also contends that the prosecutor's reference to the defendant as a "mastermind," "architect of a murder for hire," and "puppet master" were not fair inferences reasonably drawn from the admitted evidence. Those comments were not objected to at trial, and therefore the SJC limited its review to whether they created a substantial likelihood of a miscarriage of justice. The SJC acknowledged that the prosecutor's comments were forceful and perhaps hyperbolic; nonetheless it found that they were "grounded in the evidence of months of planning by the defendant to arrange his wife's killing in Massachusetts while he was with friends and relatives in Florida," and, thus unlikely to have been prejudicial. *Carriere*, 470 Mass. at 22. Moreover, the SJC again referred to the trial judge's final charge and maintained that even if some of the comments were ill-advised, there was no error giving rise to a substantial likelihood of a miscarriage of justice. *Id.*[5]

Because the SJC's decision rests on an adequate and independent state ground, Carriere must show cause for the default and actual prejudice. He has not even attempted to show cause for the default. Nor, given the extensive testimony about his months of planning, can the Court discern any actual prejudice.

---

[5] The trial judge emphasized that closing arguments are not evidence, but "merely an opportunity for [the attorneys] to sum up from their perspective what they felt the evidence might suggest or mean to you." *Carriere*, 470 Mass. at 22.

17

For the foregoing reasons, the petition for habeas review is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: September 5, 2018　　　　　　　　　　　　United States District Judge